# EXHIBIT A

COMMONWEALTH OF KENTUCKY
BOONE COUNTY CIRCUIT COURT
DIVISION ____
CIVIL ACTION NO. _____

FUJI AUTOTECH USA, LLC,      PLAINTIFF

v.      **PLAINTIFF'S ORIGINAL COMPLAINT**

MITSUI SUMITOMO INSURANCE
USA, INC.,      DEFENDANT

Serve:
Corporation Service Company
421 West Main Street
Frankfort, Kentucky 40601

************

COMES NOW, Fuji Autotech USA, LLC (hereinafter referred to as "Fuji" and/or "Plaintiff"), complaining of Mitsui Sumitomo Insurance USA, Inc. (hereinafter referred to as "MSIG" and/or "Defendant") and respectfully show as follows:

**I.**
**PARTIES AND PROCESS SERVICE**

1. At all times material hereto, Plaintiff Fuji was a foreign Limited Liability Company formed in the state of Delaware with its principal office in Boone County, Kentucky.

2. Defendant MSIG is an insurance company engaging in the business of insurance in the State of Kentucky. Defendant may be served through their registered agent, Corporation Service Company, at 421 West Main Street, Frankfort, Kentucky 40601.

**II.**
**VENUE**

3. Venue is proper in Boone County, Kentucky because the insured property giving rise to this cause of action is situated in Boone County, Kentucky. KRS § 452.460.

Presiding Judge: HON. JAMES R. SCHRAND (654281)

COM : 000001 of 000015

## III.
## NOTICE AND CONDITIONS PRECEDENT

4.  All other conditions precedent necessary to maintain this action and the Claim under the Policy have been performed, occurred, or have been waived by Defendant; or Defendant is otherwise estopped from raising same due to Defendant's prior breach of the insurance contract. Defendant has not been prejudiced by Plaintiff's action, inactions, or delays, if any.

5.  Any failures that may have occurred on behalf of the Plaintiff have not prejudiced the Defendant in this case.

## IV.
## FACTS

6.  Plaintiff is the owner of a commercial building located at 70 Precision Dr., Walton, Kentucky 41094 (the "Property"). The Property was insured by insurance policy number PKG3126479, issued by Defendant MSIG (the "Policy"). Plaintiff is the owner of the Policy and the named insured on the Policy.

7.  On or about April 3, 2018, or another time when the Policy was in effect, a severe wind and hail storm caused substantial damage to the Property and constituted a covered loss under the Policy. After becoming aware of the damages to their Property as a result of the storm, Plaintiff made a claim and demand for payment on Defendant for damages to the Property and other damages covered by the terms of the Policy.

8.  After the claim was received and assigned, Defendant assigned claim number CA116746 (the "Claim") to the loss and began their investigation. Throughout the handling of Plaintiff's Claim, Defendant, through its agents, employees, and representatives, failed to comply with the Policy, the Kentucky Insurance Code and Kentucky law in handling Plaintiff's claim. Further, Defendant has refused to pay all amounts due and owing under the Policy for the Claim.

9. Defendant assigned Engle Martin & Associates, Inc. ("EMA") to assist in the investigation of the Claim. EMA inspected the Property on approximately July 5, 2018. EMA's inspection was performed with a pre-determined approach designed to aid in the wrongful denial of Plaintiff's Claim. EMA intentionally overlooked numerous areas of covered losses and grossly undervalued the actual damages at the Property. Specifically, EMA claimed that the damages observed to the roof were due to wear and tear, and not wind or hail damages. Further, despite the onset of new leaks at the Property, EMA wrongfully determined that the interior water damage to the office and warehouse roof was due to worn sealant and again, predictably, due to mere wear and tear. The storm-caused damages from the loss were, or should have been, evident to Defendant from the outset of their investigation, but were intentionally overlooked in an effort to avoid payment as owed under the Policy.

10. Defendant also retained Rimkus Consulting Group, Inc. ("Rimkus") to assist in the investigation of the Claim. Rimkus is commonly engaged to assist in claims handling by insurers like Defendant due to their common practice of favoring insurers over policyholder. Defendant retained Rimkus for the specific purpose of ensuring their reports were favorable to them.

11. Rimkus performed a property inspection on approximately July 11, 2018. Their inspection failed to incorporate the obvious storm-caused damages at the Property. Specifically, Rimkus refused to acknowledge the presence of the hail storm on or about April 3, 2018. Rimkus claimed that the damages found on the metal roof were not due to hail but rather due to foot traffic. Rimkus also failed to properly address the damages on the modified bitumen roof on the Property. Further, despite EMA previously claiming that the interior damages were due to wear and tear and worn sealant, Rimkus claimed that the interior damages were now also due to inadequate repairs, deficient flashing conditions, and inadequate drainage. These inconsistent

statements are all evidence of the misrepresentations made throughout the handling of Plaintiff's Claim which Defendant relied on in their Claim decision.

12. Defendant's consultants provided Defendant with a basis for the denial of Plaintiff's Claim by claiming that the damages at the Property were anything but storm-caused.

13. After their investigation, Defendant intentionally delayed the resolution of Plaintiff's Claim and did not provide a decision letter until October 18, 2018. The denial was based on Defendant's consultants' reports and Property inspections, all of which were completed nearly three months prior. Despite having this information, Defendant delayed the resolution of the Claim without any proper explanation for the denial. As a result of Defendant's delay, Fuji's Property continued to experience subsequent damage from the reported date of loss. Despite making efforts to protect the Property from further damages, the storm-caused damages from the reported date of loss were so severe that it caused the Property's ceiling to come down on a number of occasions during the many months Plaintiff was waiting for Defendant's Claim decision. After this was brought to Defendant's attention, Defendant claimed that these damages were from a subsequent storm and refused to properly incorporate this new information in its investigation of the Claim. It was obvious, or should have been obvious to Defendant, that the storm from the reported date of loss caused these consequential damages to the Property.

14. On September 4, 2018, Defendant claimed that it had received everything it needed to make a decision on the Claim; Defendant further indicated that it was submitting the coverage recommendation to management that same day. However, Defendant did not provide Fuji with a final written decision letter until October 19, 2018, more than one month after Defendant claimed it had everything it required for a final decision. This delay is more than a mere unreasonable conduct on Defendant's part. Defendant intentionally delayed making a decision on

*Fuji Autotech v. MSIG*  Page 4
Plaintiff's Original Petition

the Claim with reckless disregard as to the safety of the employees at Plaintiff's Property location. Plaintiff had informed Defendant on numerous occasions, with the most recent notice provided to Defendant on September 4, 2018, that the Property was in a substantially unsafe state due to the collapse of the ceiling(s). Plaintiff had informed Defendant that their employees could be exposed to any resulting harm from the storm damages. Despite Defendant's awareness of this, it failed to properly address this issue and instead recommended to Plaintiff that they make a new claim for the same storm-caused damages from the Claim, ultimately further delaying any decision on a claim and subjecting Plaintiff and their employees to greater harm.

15. Defendant's refusal to pay Plaintiff for the loss as fully owed under the Policy has prevented Plaintiff from being able to repair the Property. The Property and Plaintiff's employees continue to be at risk. Despite Plaintiff's attempts to mitigate the damages, the Property continues to experience interior damages which has resulted in mold formations throughout the Property. Plaintiff's employees at the Property have reported unusual smells from the mold. Further, the employees have developed numerous symptoms related to mold exposure such as respiratory issues and other health concerns. Defendant's acts and omissions throughout the entire handling of Plaintiff's Claim are putting Plaintiff's employees' health at risk. These illnesses are all direct and foreseeable consequences of Defendant's refusal to pay for the repair costs pursuant to the Claim. Defendant is acting with reckless disregard and is knowingly putting the health of the employees at risk.

16. Defendant's acts and omissions have caused Plaintiff inconvenience and have resulted in Plaintiff's inability to make full and proper use of its Property.

17. Plaintiff was forced to retain third-party consultants, Alliance Consulting & Testing, Inc. ("Alliance"), to inspect the Property for damages after Defendant's wrongful denial. After a

Property inspection, Alliance indicated they disagree with the findings in the Rimkus report. Specifically, Alliance confirmed numerous areas of hail impacts and damages, contrary to Defendant's prior findings. It was also determined that the modified bitumen roof on the Property had sustained physical damage by hail, evident by the numerous cracking and fractures on the roof. Alliance concluded that the modified bitumen roof had been compromised as a result of this hail damage. Despite being aware of Alliance's report, Defendant intentionally omitted select portions of Alliance's findings in its letter dated August 12, 2019: "Alliance reaffirmed the findings in its original report and reiterated its conclusion that the roof had not sustained physical damage." This is a complete misrepresentation of the findings. Alliance had specifically stated in both of their reports that "[Alliance] observed physical damage to the modified bitumen roofing system due to hail impact… the performance of the modified bitumen roofing system has been compromised and will need to be replaced."

18. Defendant's improper and unfair investigation and misrepresentations of the covered losses were brought to its attention and a re-inspection was requested around mid-September 2018. The reinspection took place on December 17, 2018 with EMA, Rimkus, and representatives of Plaintiff. Defendant again continued to unreasonably and intentionally delay the resolution of Plaintiff's Claim. Defendant did not provide its findings and decision from the reinspection until March 6, 2019. Defendant did not provide proper notification to Plaintiff as to the reasons for its delayed decision. Predictably, Rimkus generally reported the same findings as their initial inspection.

19. Defendant advised that Rimkus and EMA did find some "functional hail damage" at the Property, and without any other proper explanation, Defendant refused payment for these findings claiming that they fell below the Policy's deductible.

---

20. Defendant's statement that Rimkus had found "functional hail damage" to the Property during their second inspection is clear evidence of Defendant's biased and pre-determined approach from the outset of this investigation. Further, it is in complete contradiction to all of Defendant's prior reports, including the Rimkus report from July 25, 2018, which indicated there was no functional damage found on the roof.

21. Defendant continued to deny Plaintiff's Claim based on inconsistent and contradicting representations, first implying that there was absolutely no hail damage found on the Property, and subsequently implying that whatever functional damage was found on the roof fell below the deductible, thus allowing Defendant to once again avoid liability under the Policy.

22. The majority of Defendant's denial is based on its misrepresentations about the Policy terms. Defendant claimed that the Policy provides coverage for direct physical loss to covered property, and then further stated a condition that this requirement "is satisfied only if the physical damage to a building's roof or other component results in an actual loss to the insured." Defendant further represented that the Policy does not cover "non-functional" hail damage as this does not constitute "direct physical loss to the covered property." In essence, Defendant seemed to rely upon what is commonly known as a "cosmetic exclusion" or "cosmetic endorsement" that would function to exclude non-functional (or cosmetic) damages.

23. Importantly, the Policy at issue does not contain such an exclusion. Defendant's representation that it does, and attempt to constructively apply it post-issuance, constitutes an intentional misrepresentation of the Policy in violation of Kentucky law.

24. In the Policy Defendant issued to Plaintiff, coverage is afforded for "direct physical loss." The Policy does not define or limit the term "loss." There is no exception to the term "loss" in

the Policy. Plaintiff is entitled to all the coverage it may reasonably expect to be provided under the policy. The Policy at issue clearly does not exclude non-functional damage.

25. The physical loss sustained to the Property as a result of the said storm is clear and was obvious from the outset of Defendant's investigation but intentionally ignored by Defendant in order to avoid liability and payment for this loss. The Property's roof is not the same as it was prior to the storm. The roof has been physically changed for the worse as a result of the loss. The hail strikes on the Property have not only degraded the material making it more vulnerable to further damage, but they have also decreased the value of the Property. This is a physical loss no matter what the definition. This is a physical loss that is covered under the Policy.

26. Defendant was obligated to pay Plaintiff's Claim under the terms of the Policy. Defendant did not have a reasonable basis in law or fact for denying Plaintiff's Claim. Further, Defendant knew there was no reasonable basis for denying Plaintiff's Claim, or otherwise acted in reckless disregard for whether such a basis existed. Defendant refused to pay the full proceeds owed under the Policy, although due demand was made for proceeds to be paid in an amount sufficient to cover the damaged property. Defendant's conduct constitutes a breach of the insurance contract between Defendant and Plaintiff and bad faith in the handling of Plaintiff's Claim.

27. Defendant misrepresented to Plaintiff that the damage to the Property was not covered under the Policy, even though the damage was covered by the Policy. Defendant failed to conduct a proper investigation or provide to Plaintiff a thorough estimate that incorporating the full extent of covered losses, and misrepresented to Plaintiff about the coverage of the Policy. Defendant relied on inapplicable policy exclusions and also misrepresented the coverage afforded by the Policy for direct physical loss.

28. Plaintiff has also been unable to continue full business operations at its Property as a result of Defendant's acts and omissions, namely Defendant's unreasonable delay in adjusting the Claim and making full payment for the covered losses as owed under the Policy. Plaintiff's consultants estimated the repairs to the Property as a result of the said storm would take a minimum of thirteen (13) weeks to complete. Plaintiff was forced to cease operations for this time and has suffered a loss of business income as a result.

29. Defendant has failed to acknowledge and has failed to act reasonably promptly upon communications with respect to the Claim.

30. Defendant has failed to adopt and implement reasonable standards for the prompt investigation of the Claim.

31. Defendant has failed to make a good faith attempt to settle the claim and has failed to make payment to Plaintiff as owed under the Policy. As a result of Defendant's acts and omissions, Plaintiff is entitled to interest pursuant to KRS 304.12-235.

32. Defendant refused to pay the Claim without first conducting a reasonable investigation based upon all available information. Further, Defendant has failed to attempt in good-faith to effectuate a prompt, fair and equitable settlement of the Claim in which their liability had become reasonably clear. Thus, their denial to fully compensate Plaintiff was a misrepresentation of the Policy and of pertinent facts. Defendant's conduct as described above constitutes a violation of KY. STAT. §304.12-230.

## V.
## CAUSES OF ACTION AGAINST DEFENDANT MSIG

33. Defendant MSIG is liable to Plaintiff for intentional breach of contract, intentional breach of the duty of good faith and fair dealing, bad faith, as well as intentional violations of the Kentucky Insurance Code.

*Fuji Autotech v. MSIG*                    Page 9
Plaintiff's Original Petition

34. Plaintiff reincorporates and realleges each and every preceding allegation as if fully set forth herein.

  A.  **COUNT ONE: Breach of Contract.**

35. The Policy is a valid, binding and enforceable contract between Plaintiff and Defendant MSIG. Defendant, individually and by and through its agents, representatives, and employees, breached the contract by refusing to perform its obligations under the terms of the Policy and pursuant to Kentucky law. Defendant's breach proximately caused Plaintiff injuries and damages within the minimal jurisdictional limits of this Court. All conditions precedent required under the Policy have been performed, excused, waived or otherwise satisfied by Plaintiff, or Defendant is estopped from raising the issue due to Defendant's prior breach of the insurance contract.

36. As a direct and proximate result of Defendant's breach, Plaintiff has sustained property damage, inconvenience, and has been denied full and proper use of its Property. Plaintiff's employees have suffered emotional distress and mental anguish, anxiety, and mental frustration. Further, Plaintiff has suffered business interruption and loss of income, and has incurred costs and expenses related to the loss of use of its Property, attorney fees, and other costs, all to their damage in an amount exceeding the minimal jurisdictional limits of this Court.

  B.  **COUNT TWO: Noncompliance with the Kentucky Insurance Code: Unfair Claims Settlement Practices Act.**

37. The conduct, acts, and/or omissions by Defendant constituted Unfair Claims Settlement Practices pursuant to KY STAT.§ 304.12-230, in that Defendant did not attempt in good faith to effectuate prompt, fair, and equitable settlement of claims in which liability has become reasonably clear, and by compelling its insured to institute litigation to recover a fair amount for the Claim.

38. As described above, Defendant knew there was no reasonable basis, or acted in reckless disregard for whether such a basis existed, in denying the Claim and/or failing to effectuate a prompt, fair, and equitable settlement of the Claim. Defendant was obligated to pay the Claim under the terms of the Policy, lacked a reasonable basis for denying the Claim, and either knew there was no reasonable basis for doing so, or acted with reckless disregard for whether such a basis existed. Defendant's acts and omissions constitutes bad faith and in violation of the Unfair Claims Settlement Practices Act, as outline in KRS 3014 12-230.

39. As a direct and proximate result of Defendant's bad faith and violations of the Unfair Claims Settlement Practices Act, Plaintiff has sustained property damage losses, inconvenience, and has been denied full and proper use of its Property. Plaintiff's employees have suffered emotional distress and mental anguish, anxiety, and mental frustration. Further, Plaintiff has incurred costs and expenses related to the loss of use of its Property, business interruption and loss of income, attorney fees, and other costs, all to their damage in an amount exceeding the minimal jurisdictional limits of this Court.

40. Plaintiff asserts the bad faith and/or violations of the Unfair Claims Settlement Practices Act by Defendant were intentional, willful, wanton, reckless, and the acts of Defendant were grossly negligent, and constituted oppression and malice upon or towards Plaintiff thus entitling Plaintiff to an award of punitive damages to be determined by the jury.

    C. **COUNT THREE: Negligence.**

41. Defendant owed a duty to Plaintiff to exercise reasonable care in performing the repair of the Property.

42. Defendant so carelessly and negligently performed the repair of Plaintiff's Property as to constitute a breach of the duty they owed the Plaintiff.

43. As a direct and proximate result of this breach, Plaintiff has sustained property damage losses, inconvenience, and has been denied full and proper use of its Property. Plaintiff's employees have suffered emotional distress and mental anguish, anxiety, and mental frustration. Further, Plaintiff has incurred costs and expenses related to the loss of use of its Property, business interruption and loss of income, attorney fees, and other costs, all to their damage in an amount exceeding the minimal jurisdictional limits of this Court.

44. Plaintiff asserts that the actions of Defendant were intentional, willful, wanton, reckless, and the acts of Defendant were grossly negligent, and constituted oppression and malice upon or towards Plaintiff, thus entitling Plaintiff to punitive damages in an amount to be determined by a jury.

### D. COUNT FOUR: Breach of the Duty of Good Faith and Fair Dealing.

45. Defendant's above-described acts and omissions breached the common law duty of good faith and fair dealing contained in the contract which was owed to Plaintiff by denying or delaying payment on the Claim when Defendant knew or should have known that its liability to Plaintiff was reasonably clear.

46. As a direct and proximate result of said acts and omissions, Plaintiff has sustained property damage, and inconvenience. Defendant's conduct proximately caused Plaintiff's employees to suffer emotional distress and mental anguish, anxiety, and mental frustration, caused Plaintiff to be restricted to full access to its Property, caused business interruption and loss of income, and caused Plaintiff to incur costs and expenses related to the loss of use of its Property, attorney fees, and other costs all to their damage in an amount exceeding the minimal jurisdictional limits of this Court.

47. Plaintiff asserts that the actions of Defendant were intentional, willful, wanton, reckless, and the acts of Defendant were grossly negligent, and constituted oppression and malice upon or towards the Plaintiff, thus entitling them to punitive damages in an amount to be determined by a jury.

## VI.
## KNOWLEDGE

48. Each of the Defendant's acts described above, together and singularly, was done intentionally, knowingly, willfully, and with reckless disregard as the safety of Plaintiff, its property, the damages and claims, and its employees' health.

## VII.
## DAMAGES

49. Plaintiff will show that all the aforementioned acts, taken together or singularly, constitute the producing causes of the damages sustained by Plaintiff.

50. For breach of contract, Plaintiff is entitled to regain the benefit of Plaintiff's bargain, which is the amount of Plaintiff's claim, together with attorney fees.

51. For noncompliance with the Kentucky Insurance Code, Unfair Claims Settlement Practices, Plaintiff is entitled to actual damages, which include the loss of the benefits that should have been paid pursuant to the Policy, court costs and attorney's fees.

52. For knowing conduct of the acts complained of with respect to serious harm that was known to Defendant that would occur as a result of their misconduct, and Defendant's reckless disregard of the rights of Plaintiff, Plaintiff asks for an award of punitive damages under KRS § 411.186.

53. For breach of the common law duty of good faith and fair dealing, Plaintiff is entitled to compensatory damages, including all forms of loss resulting from the insurer's breach of duty,

such as additional costs, economic hardship, losses due to nonpayment of the amount the insurer owed, exemplary damages and damages for emotional distress to Plaintiff's employees as a result of Defendant's acts and omissions.

54. For Defendant's failure to make a good faith attempt to settle the claim within the statutory time limits mandated under KRS 304.12-235, Plaintiff is entitled to twelve (12) percent interest per annum of the value of the final settlement. KRS § 304.12-235.

55. For the prosecution and collection of this claim, Plaintiff has been compelled to engage the services of the law firms whose names are subscribed to this pleading. Therefore, Plaintiff is entitled to recover a sum for the reasonable and necessary services of Plaintiff's attorneys in the preparation and trial of this action, including any appeals to the Court of Appeals and/or the Supreme Court of Kentucky. KRS § 304.12-235.

## VIII.
## JURY DEMAND

56. Plaintiff hereby requests a jury trial and tenders the appropriate jury fee.

## IX.
## PRAYER

57. WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that upon trial hereof, Plaintiff has and recover such sums as would reasonably and justly compensate Plaintiff in accordance with the rules of law and procedure, both as to actual damages, statutory penalties and interest, and all punitive and exemplary damages as may be found. In addition, Plaintiff requests the award of attorney's fees for the trial and any appeal of this case, for all costs of Court on their behalf expended, for pre-judgment and post-judgment interest as allowed by law, and for any other and further relief, either at law or in equity, to which Plaintiff may show itself to be justly entitled.

Respectfully submitted,

*/s/ Erik D. Peterson*
ERIK D. PETERSON (KBA NO. 93003)
**Mehr Fairbanks & Peterson**
 **Trial Lawyers, PLLC**
201 West Short St., Ste. 800
Lexington, Kentucky 40507
Telephone: (859) 225-3731
Facsimile: (859) 225-3830
Email: edp@austinmehr.com

*Attorney for Plaintiffs*